UNITED STATES of America, Appellee,

v.

Everett S. HEYMAN, Appellant.

UNITED STATES of America, Appellee,

v.

UNIVERSAL SPECIALTIES, INC., d/b/a
Universal Specialties, Appellant.

Nos. 74–1959 and 74–1960.

United States Court of Appeals,
Fourth Circuit.

Argued July 15, 1977.

Decided Sept. 19, 1977.

John H. Weston, Beverly Hills, Cal. (Sam Rosenwein, Studio City, Cal., G. Randall Garrou, Marvin D. Miller, Norfolk, Va., Fleishman, Brown, Weston & Rohde, Beverly Hills, Cal., on brief), for appellants.

Robert F. McDermott, Jr., Asst. U. S. Atty., Alexandria, Va. (William B. Cummings, U. S. Atty., Alexandria, Va., Patricia W. Deitz, John J. Mulcahy, Steven J. Salant, Third Year Law Students, on brief), for appellee.

Before WINTER and BUTZNER, Circuit Judges, and JOSEPH H. YOUNG, District Judge, United States District Court for the District of Maryland, sitting by designation.

BUTZNER, Circuit Judge:

Everett S. Heyman and Universal Specialties, Inc., appeal a judgment convicting them of sending obscene matter through the mail in violation of 18 U.S.C. § 1461. Though they assign numerous errors, their major contention is that the district judge erred in his charge by improperly telling the jury to apply contemporary community standards in determining whether the contested matter lacked serious scientific value. We vacate the judgment and remand for a new trial.

In *Miller v. California,* 413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 (1973), the Court directed the trier of fact to apply the following guidelines to determine whether sexually oriented expression is protected by the first amendment: "(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest . . . ; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." These standards are applicable to prosecutions charging violations of federal statutes. *United States v. 12 200-Ft. Reels of Film,* 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973).

One of the contested issues at the trial was whether the matter mailed by Heyman and his company, Universal Specialties, lacked serious scientific value. With respect to this question, which involves the third test prescribed by *Miller,* there was a conflict in the evidence. The defendants' expert witness testified that the material had scientific value, and the government's expert stated that it did not.

The trial judge defined "obscenity" three times in his charge. The first time, he stated in summary fashion the guidelines set forth in *Miller.* He repeated them when he told the jury the elements of the crime which the government had to prove. Finally he discussed in detail each of these guidelines. In this discussion, he did not confine the application of contemporary community

standards to the first two prongs of the obscenity test as prescribed by *Miller*. Instead, he told the jury:

Contemporary community standards are to be used by you in evaluating whether the material before you satisfies the elements of obscenity.

Specifically, with respect to the third part of the *Miller* test, he said:

One of the underlying purposes of the constitutional safeguard of freedom of expression is the fostering of artistic and literary creativity, and the furthering of science.

It follows that there is value, in a constitutional sense, in attempts at serious art or literature or science, even where disagreement exists as to whether a work is in fact art or literature or scientific. Community standards must then be applied to determine whether the value is significant enough to be termed "serious."

At the conclusion of the charge, the defendants objected to the court's instruction that contemporary community standards should be used to ascertain the scientific value of the contested matter. The judge, however, overruled their objections and declined to modify his charge.

■ The government now properly concedes that the charge was erroneous. In *Miller*, the Court confined the application of contemporary community standards to determining whether the work (a) appeals to the prurient interest, or (b) is patently offensive. 413 U.S. at 24 and 30, 93 S.Ct. 2607. Nowhere does the opinion suggest that the scientific value of sexually oriented expression is to be judged on such a parochial basis.

Nevertheless, the government argues that the court's error was harmless. First, it relies on the familiar rule that the charge must be considered as a whole, and it points out that twice the court defined obscenity correctly. Secondly, the government contends that the jury could not have been misled because the testimony of the expert witnesses and the argument of counsel did not refer to community standards when they discussed the question of scientific value. Finally, the government insists that the court corrected its instruction in a supplemental charge.

■ Since *Miller* provides a standard for determining first amendment rights, the trial court's misstatement was a constitutional error. Consequently, it must be shown to be harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We believe that the government's submission does not satisfy this exacting test.

■ When the charge is viewed as a whole, the emphasis the judge placed on his misstatement is apparent. The error occurred when he told the jury how it should apply the definition of obscenity to the facts in the case; it was not an isolated inaccuracy. Through its faulty explanation, it infected the correct definition that had been given previously.

■ The testimony of the witness and the argument of counsel could not render the error harmless. The judge instructed the jury that they need not accept the experts' testimony or counsels' recollections of the evidence. In contrast, he emphasized that the jury was "duty bound to follow the law as stated in the instructions and to apply that law to the facts." The error involved a statement of the law, and there is no basis for the government's speculation that the jury disregarded the judge's instruction to apply the law as explained in the charge.

■ Finally, the record does not sustain the government's suggestion that the error was corrected by the court's supplemental charge. After the jury had deliberated for about two hours, the foreman sent the judge a note requesting a written definition of obscenity. At a conference of the court and counsel, the defendants again objected to the charge, but the judge gave no indication that he would modify it. Instead, noting that some of it was in his own handwriting, he said he would have it typed and sent to the jury. Unfortunately, this sup-

plemental charge was not made a part of the record, and it has been lost.

At the hearing on the defendants' motion for a new trial, the judge acknowledged that his charge was probably erroneous, but he expressed the opinion that in view of the evidence, it was harmless. He did not suggest, however, that he had corrected the error in his supplemental charge. Consequently, it is impossible for us to say, as the government urges us to do, that the supplemental charge corrected the mistake in the original charge.

We conclude that since the erroneous definition of obscenity in the court's charge is not harmless error beyond a reasonable doubt, the judgment must be vacated and the case retried.

■ The other assignments of error require no extended discussion. The statute which the defendants were charged with violating, 18 U.S.C. § 1461, is constitutional when applied with the proper standard for judging obscenity. *Roth v. United States,* 354 U.S. 476, 491–93, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). Count VI of the indictment, which alleges that an illustrated advertisement is obscene, is not insufficient because one of the illustrations is a drawing. It is the content of the work, not the medium in which it is executed, that is determinative. *See Kaplan v. California,* 413 U.S. 115, 119–20, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973) (dictum). The trial court's comments on the evidence were proper. *See Quercia v. United States,* 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321 (1933).

■ Federal Rule of Criminal Procedure 30 provides that at his request, a party should be given an opportunity to object to the charge out of the presence of the jury. Here the court denied the defendants' request, but there is no indication that the defendants were prejudiced by the bench conference at which the objections were made. Although the Supreme Court has indicated that a defendant's request should be granted, it has held that denial, in the absence of prejudice, does not constitute reversible error. *See Hamling v. United States,* 418 U.S. 87, 131–35, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). Finally, in view of our disposition of the case, we find it unnecessary to rule on the defendants' assignments of error concerning the punishment which the court imposed.

The judgment is vacated, and this case is remanded for a new trial.